UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN MICHAEL NORMAN, | ) | Case No. 3:19-CV-02520 |
| | ) | |
| Plaintiff, | ) | JUDGE ZOUHARY |
| | ) | |
| -vs- | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

## I. Introduction

Plaintiff, Justin Michael Norman ("Norman" or "Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Norman's applications for DIB and SSI be affirmed.

## II. Procedural History

On July 7, 2016, Norman filed both a Title II application and a Title XVI application for a period of disability and disability benefits beginning September 20, 2007. The Commissioner of Social Security denied his applications on December 27, 2016 and upon reconsideration on April 10, 2017. Norman requested a hearing, which was held before an ALJ on May 14, 2018. In a

written decision dated September 12, 2018, the ALJ denied Norman's applications for benefits.[1] The Appeals Council denied Norman's request for review. He now seeks judicial review pursuant to 42 U.S.C. §405(g).

Norman has raised a single issue on appeal: whether the ALJ properly evaluated the opinion of his treating physician, Dr. Mark Kahle, when she gave his opinion partial weight.

## III. Background

The ALJ found that Mr. Norman suffered from the following severe impairments: hidradenitis suppurativa; obesity; depression; anxiety; and cannabis use disorder. (ECF No. 11 at 27). The symptoms associated with hidradenitis suppurativa that Norman experiences include frequent painful cysts on multiple areas of his body, including his tail bone, underarms, groin, and back. The treatment for these cysts includes excision, chemical cauterizations, and skin grafts, all which Norman has underwent.

### A. Medical Evidence

Norman's medical history of hidradenitis suppurativa began in 2008 when he presented at the emergency room with several problems including cysts in both armpits. (ECF No. 11 at 455). He reported that he had experienced similar cysts off and on for a number of years and that they typically healed on their own. (ECF No. 11 at 454). Norman was prescribed Vicodin for the pain and told to seek medical attention if the cysts change or worsen. (ECF No. 11 at 455).

In May 2014, Norman again visited the emergency room with complaints of an abscess in his right armpit causing mild pain. (ECF No. 11 at 385). The medical notes also indicated several

---

[1] The Transcript of Proceedings before the Social Security Administration is located at ECF No. 11.

cysts in the same area. (ECF No. 11 at 385). In August 2015, he had skin removed from his armpits where the abscesses and cysts had been occurring. (ECF No. 11 at 808). During a follow up examination in September, the doctor noted that Normal was recovering well from that surgery. (ECF No. 11 at 798). However, Norman also complained of abscess in his groin, which the doctor removed that day. (ECF No. 11 at 796). In October 2015, Norman went to the emergency room complaining of abscesses in his groin area which caused him moderate pain. (ECF No. 11 at 358). The abscesses were removed. (ECF No. 11 at 358). The following month, Norman had skin removed from his groin where the abscesses had been occurring and a skin graft placed on the wound. (ECF No. 11 at 526, 530, 533). In December 2015, Norman had another skin graft placed on the groin area. (ECF No. 11 at 490, 1000). At a follow up visit in March 2016, Norman informed the doctor that he had noticed a 2 cm cyst on his left armpit which he had popped and drained. (ECF No. 11 at 474). The doctor noted that the skin graft on his groin was healing well with no sign of infection or drainage. (ECF No. 11 at 474). Norman went in for a follow-up in August 2016. (ECF No. 11 at 1015). He reported he was feeling well and had no concerns. (ECF No. 11 at 1015).

Norman was next seen by a doctor in January 2018, when he went to Dr. Mark Kahle for a new patient exam. Kahle noted "multiple fluctuance, non-tender masses of the upper back, no erythema, drainage, or evidence of infection[.]" (ECF No. 11 at 1041). Kahle referred Norman to Dr. Alisha Plotner, a dermatologist at The Ohio State University Medical Center. (ECF No. 11 at 1041). There is no record of Norman following up with Dr. Plotner. Norman returned to Kahle in March 2018 where he presented with a cyst on his left groin that had been present for three weeks.

Kahle drained the cyst that day and instructed Norman to return if symptoms worsen or return. (ECF No. 11 at 1044, 1047, 1048).

### B. Relevant Testimonial Evidence

At the hearing, Norman testified that he still experienced breakouts affecting multiple areas of his body despite the various forms of treatment, including surgeries, painkillers, and antibiotics. (ECF No. 11 at 123-127). Norman testified that although he had surgery for the breakout on his tailbone, it never healed properly, and he now has a permanent drainage cavity. (ECF No. 11 at 123). This permanent break out on his tailbone makes it hard for him to sit for longer than 40 minutes. (ECF No. 11 at 124). Breakouts in other areas make it difficult for him to use his upper extremities for lifting, carrying, and reaching. (ECF No. 11 at 124-130). Norman testified that on the date of the hearing had five major breakouts. (ECF No. 11 at 59, 62).

Norman further testified he frequently missed work due to his skin condition and was eventually let go from almost all of his previous jobs because of this. (ECF No. 11 at 113-117). Norman reported that he was even let go from a 2-month long part-time job because he missed too much work during that time period. (ECF No. 11 at 113). When discussing absences from work, Norman said "[i]t's a given that I'm going to miss a day a week." (ECF No. 11 at 132). He explained that he was unable to make it through two weeks without missing a day of work during each of his previous jobs. (ECF No. 11 at 132-133).

### C. Relevant Opinion Evidence

#### 1. Mark Kahle, D.O. – May 2018

On May 2, 2018, Kahle drafted an opinion letter stating that Norman suffered "frequent abscesses and infections" from his hidradenitis suppurativa that "require treatment and lead to

absences from work." (ECF No. 11 at 1035). The letter further stated at "[e]xposure to chemicals, irritants as well as excessive sweating can lead to worsening and exacerbations of his symptoms. He has to wear loose fitting clothing in order to prevent excessive perspiration. He also has to take frequent showers in order to try to avoid infections. His symptoms cause exacerbations at least 5 times per month that would cause him to leave work early or miss work entirely." (ECF No. 11 at 1035). Kahle noted that Norman had multiple surgeries in 2015 for treatment of the condition and "has had significant symptoms since that time." (ECF No. 11 at 1035). Kahle stated that Norman's condition has caused him to have "significant difficulty maintaining long term employment." ECF No. 11 at 1035).

The ALJ gave Kahle's opinion "partial weight." (ECF No. 11 at 34). She explained that although Kahle was a treating physician, he had only been treating Norman for a couple of months. Additionally, the ALJ stated that the treatment record does not support the need for absences from work at the frequency stated by Kahle. (ECF No. 11 at 34). Consistent with Kahle's opinion, the ALJ included a limitation to Norman's exposure to extreme heat and chemicals in the RFC. (ECF No. 11 at 34).

### 2. Babatunde Onamusi, M.D. -

In November 2016, following a consultative examination, Onamusi opined that Norman should be able to engage in gainful employment and that episodes of flare-ups with actively draining lesions, depending on location, may affect the claimant's ability to engage in some work activities. (ECF No. 11 at 988). The ALJ gave Onamusi's opinion "some weight" explaining that it was consistent with "the longitudinal treatment record" but noted that the opinion of the state agency medical consultant at the reconsideration level, Dr. Delphia, was more persuasive due to

his specialized knowledge in assessing clinical findings within the Social Security standard. (ECF No. 11 at 34).

### 3. State agency opinions

#### i. William Bolz, M.D. – December 2016

In December 2016, state agency consultant Bolz opined that Norman would be limited to a range of medium exertion with no postural or environmental limitations. (ECF No. 11 at 90 and 101). Bolz stated that Norman is able to do chores, drive, shop and handle a bank account. (ECF No. 11 at 88). The ALJ gave Bolz's opinion little weight explaining that Delphia's opinion was more persuasive and "took into consideration additional evidence that was not available at the initial level." (ECF No. 11 at 33).

#### ii. Michael Delphia, M.D. – March 2017

In March 2017, Delphia reexamined Norman and determined that the lesions were healed at that time but that tiny papules were present that could erupt if he was subjected to increased lifting and pressure in those areas. (ECF No. 11 at 113). Delphia opined that Norman would be limited to light exertion with no postural or environmental limitations. (ECF No. 11 at 113). The ALJ gave Delphia's opinion "some weight" finding that it was "consistent with the evidence of record at the time of the opinion." (ECF No. 11 at 34). However, the ALJ further limited the RFC based on evidence received at the hearing level as well as the claimant's testimony. (ECF No. 11 at 34).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: hidradenitis suppurativa; obesity;

6

    depression; anxiety; and cannabis use disorder (20 CFR 404.1520(c) and 416.920(c)).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no exposure to extreme heat or humidity; no exposure to concentrated fumes or gases; no overhead reaching; no crouching or crawling; limited to simple tasks that are not fast paced meaning the pace of productivity is not dictated by an external source over which he has no control.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

Based on her findings, the ALJ determined that Norman has not been under a disability as defined by the Social Security Act from September 20, 2007, through the date of the decision. (ECF No. 11 at 36).

Norman appeals the ALJ's decision arguing that the ALJ failed to give good reasons for giving Kahle's opinion other than controlling weight.

**V. Law & Analysis**

   **A. Standard of Review**

The Court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers* v. *Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers*, 486 F.3d at 241; *Biestek* v. *Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." (citing *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971))).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen* v. *Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen* v. *Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers* v. *Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer* v. *Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter,* 78 F.3d 305, 307 (7th Cir. 1996); citing *Wilson* v. *Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not

mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion)); *Shrader* v. *Astrue,* No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) (citing *Morris* v. *Sec'y of Health & Human Servs*., 845 F.2d 326 (6th Cir. 1988) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.")). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs* v. *Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

1. Treating Source[2]

The ALJ found that Kahle was a treating source but gave his opinion only "partial weight". Under the treating source rule, an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory

---

[2] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017. See 20 C.F.R. § 416.927. Norman filed his claim before the revision took effect.

9

diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley* v. *Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (eff. to July 31, 2006)[3])). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996).

Here, Kahle's opinion was inconsistent with the substantial evidence in the record. The ALJ noted that the treating relationship with Kahle had existed only a few months, but, in fact, Norman had treated with Kahle on only two occasions: January 16, 2018 and March 22, 2018. Not only does this speak to the length of the treating relationship, this evidence also supports the ALJ's determination that the record does not support the type of limitation Kahle suggested in his opinion. Kahle opined that Norman's symptoms would necessitate him being absent from work or leaving work early at least five times a month. However, Norman only sought out medical treatment from Kahle twice in over two months. And only on the latter of those visits did Kahle treat a cyst that was self-draining by performing an in-office procedure to expedite draining the cyst. Prior to Norman's first visit with Kahle in January 2018, he had last seen a treating physician regarding his symptoms during a surgical follow-up in August 2016, at which it was found that the December 2015 skin graft was "well healed" and he had no further issues at that time. (ECF No. 11 at 1015). Although Norman underwent four surgeries in 2015 related to symptoms of his

---

[3] 20 C.F.R. § 404.1527(d)(2) was subsequently moved to 20 C.F.R. § 404.1527(c)(2). *See* 20 C.F.R. § 404.1527(c)(2)(eff. Aug. 24, 2012).

hidradenitis suppurativa, there is no record evidence of any issues throughout 2016 or 2017 and only two visits in 2018. The undersigned does not interpret the lack of medical visits in 2017 or infrequent visits in 2018 to mean that Norman was no longer experiencing symptoms. Rather, it is evidence that the symptoms did not rise to a level requiring medical intervention and were managed by Norman himself.

Additionally, Drs. Onamusi and Delhia examined Norman and despite noticing evidence of past and current mild to moderate cysts, both opined that Norman could work if such work had certain limitations. Specifically, Onamusi opined that Norman should be able to engage in gainful employment but that at certain times his flare ups may affect his ability to engage in some work activities. Similarly, Delphia opined that Norman symptoms would limit him to light exertion with no postural or environmental limitations

Accordingly, substantial evidence supports the ALJ's decision to give Kahle's opinion less than controlling weight.

Next, we must determine whether the ALJ erred in giving Kahle's opinion "partial weight". "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. § 404.1527(c)(2) (eff. Aug. 24, 2012). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole*

*v. Astrue*, 661 F.3d 931, 938 (2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

The ALJ's decision demonstrates that she considered the relevant factors before giving Kahle's opinion "partial weight." After noting that Kahle is a treating source, the ALJ considered the length of that relationship. In particular, she noted that Norman had only been treating with Kahle "a few months" at the time of his opinion. Additionally, Kahle failed to support his opinion with any evidence from the record. The Sixth Circuit has held that a treating source opinion regarding absenteeism that does not explain why an individual's impairments will result in such absenteeism is patently deficient and due no weight. *Sharp v. Barnhart*, 152 Fed. App'x 503, 509–10 (6th Cir. 2005).

The ALJ's reasons are also "'supported by the evidence in the case record'". *Blakley*, 581 F.3d at 406 (quoting SSR 96–2p, 1996 WL 374188, at *5). As explained above, the ALJ considered Kahle's opinion in relation to the entire treatment record and determined that the record did not support his opinion as to the frequency of Norman missing work.

Here, the ALJ explained why she gave Kahle's opinion less than controlling weight. Specifically, she explained that Kahle's opinion was not consistent with the substantial evidence in the medical record, including the frequency that Norman required medical assistance to manage his symptoms. Accordingly, the ALJ gave good reasons for giving Kahle's opinion "partial weight."

## VI. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Norman's application for DIB and SSI be affirmed.

DATED: 10/19/2020

                                                 *Carmen E. Henderson*
                                                 Carmen E. Henderson
                                                 United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).