IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Justin M. Norman, | Case No. 3:19 CV 2520 |
| Plaintiff, | ORDER ADOPTING<br>REPORT AND RECOMENDATION |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Justin Norman seeks judicial review of an adverse social security decision under 42 U.S.C. § 405(g). This case was referred to Magistrate Judge Carmen Henderson for a Report and Recommendation ("R&R") under Local Civil Rule 72.2(b)(2). Judge Henderson recommends this Court affirm the Commissioner's decision denying Norman's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") (Doc. 17 at 13). Norman objects to the R&R (Doc. 18); the Commissioner responds (Doc. 19).

## BACKGROUND

The R&R accurately recites the relevant factual and procedural background, which this Court adopts (Doc. 17 at 1–7). To summarize, in July 2016, Norman filed for Title II and Title XVI applications for disability benefits dating back to September 2007.

Norman, now age 40, presented with problems stemming from hidradenitis suppurativa -- including painful cysts in both armpits -- during an emergency room visit in 2008 and claims it is a condition he has been afflicted with since he was a teenager (*id.* at 454). In May 2014, Norman returned to the emergency room presenting with abscesses and cysts under his armpits. The following

year, he had skin removed from those areas where the abscesses and cysts had been occurring (*id.* at 385, 808). Later in 2015, Norman further presented with abscesses in his groin area, where skin was also surgically removed to alleviate the problem (*id.* at 358, 490, 526–533). At follow up visits in 2016, a doctor noted that the skin graft on his groin was healing and Norman reported he was feeling well and had no concerns (*id.* at 474, 1015). Next, Norman was seen by Dr. Mark Kahle in January 2018 for a new patient exam (*id.* at 1041). In March 2018, Dr. Kahle drained a cyst that had been present in Norman's groin for three weeks (*id.* at 1044–48).

At the May 2018 ALJ hearing, Norman testified that he still experienced breakouts affecting multiple areas of his body despite the various forms of treatment he had been given (*id.* at 59–60). Norman testified that although he had surgery for the breakout on his tailbone, it never healed properly, and he now has a permanent drainage cavity which makes it difficult for him to sit for longer than 40 minutes (*id.* at 62–63). He claimed breakouts in other areas make it difficult for him to use his upper extremities for lifting, carrying, and reaching (*id.* at 68–69). Norman further testified he frequently missed work due to his condition and was eventually let go from almost all of his previous jobs due to missed work (*id.* at 51–57). When discussing absences from work, Norman said "[i]t's a given that I'm going to miss a day a week." (*id.* at 71). He explained that he was unable to make it through two weeks without missing a day of work during each of his previous jobs. (*id.* at 72–73).

After a November 2016 examination of Norman, Dr. Babatunde Onamusi opined that Norman's skin disorder may have some limiting effect on his work activities but stated that he could still engage in gainful employment (Doc. 11 at 984). In December 2016, medical consultant Dr. William Bolz reviewed Norman's medical record and found that he was capable of a full range of medium work (*id.* at 100–102). In March 2017, medical consultant Dr. Michael Delphia also reviewed Norman's medical records, opining that Norman was limited to light work, because lifting

heavier weights could cause the lesions from his skin disorder to erupt (*id.* at 124–25). Shortly thereafter, in early 2018, Norman began treating with Dr. Kahle, who opined Norman's condition was severe and would require him to miss work or leave work early at least five times per month (*id.* at 1035).

The Commissioner of Social Security denied Norman's applications. The administrative law judge ("ALJ"), after a hearing, found that Norman suffered from hidradenitis suppurativa, obesity, depression, anxiety, and cannabis use disorder (Doc. 11 at 27). The ALJ also found that Norman has the residual functional capacity to perform light work, subject to certain discrete limitations, and that jobs exist in significant numbers in the national economy that Norman could perform (*id.* at 36). The Appeals Council denied Norman's request for review. This Petition followed.

## STANDARD OF REVIEW

In reviewing a denial of benefits, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**DISCUSSION**

Norman's objection is a narrow one. He argues that the ALJ failed to provide good reasons supported by substantial evidence for discrediting Dr. Kahle's opinions (Doc. 18 at 2). Dr. Kahle stated that Norman's "frequent abscesses and infections" -- and potential exacerbations of those symptoms by environmental factors -- would cause Norman to leave work early or miss work at least five times per month (Doc. 11 at 1035). Norman likewise claims that while his unique medical condition does not manifest daily, "flare ups" occur frequently enough to impede his ability to maintain full-time employment (Doc. 18 at 3). Further, Norman claims that, contrary to the R&R's conclusion, the opinion of Dr. Onamusi -- who was hired by the Commissioner to examine Norman -- supports Dr. Kahle's conclusion (*id.*). Dr. Onamusi opined that Norman should be able to sustain employment, but that flare ups in his condition "may affect [Norman's] ability to engage in some work activities" (Doc. 11 at 988). The ALJ gave Dr. Onamusi's opinion "some weight" due to its consistency with the record evidence but noted the opinion of Dr. Delphia was more persuasive due to his "specialized knowledge in assessing clinical findings within the Social Security standard" (*id.* at 34). In light of the above, the ALJ gave Dr. Kahle's opinion only "partial weight," given the short period of time he treated Norman and because the treatment record did not support the need for work absences as frequently as Dr. Kahle suggested (*id.*).

This Court now undertakes a de novo review of those portions of the R&R to which Norman objects and "may accept, reject, or modify" the recommended decision. 28 U.S.C. § 636(b)(1)(C). The ALJ's determination is reviewed under the highly deferential substantial-evidence standard, which "requires the Court to affirm the Commissioner's findings if they are supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rottmann*

*v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) (quotation marks and citations omitted).

Norman does not present a convincing argument contesting the ALJ's decision to discount Dr. Kahle's opinion. The first issue is the nature of the treating relationship between Norman and Dr. Kahle. A treating source opinion must be given "controlling weight" if such opinion is (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 372 (6th Cir. 2013). If the ALJ determines that the treating source opinion is not entitled to controlling weight, the ALJ must provide "good reasons" for discounting a treating source opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). An ALJ's failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" (*id.* at 243). However, as the Magistrate Judge correctly noted, Dr. Kahle is not properly defined as a treating source. A treating source is a medical source "who has, or has had, an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(2). Courts often look to the context and frequency of the visits between a patient and doctor. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 506 (6th Cir. 2006) ("[D]epending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship."). Dr. Kahle had a limited relationship with Norman; the record reflects only two appointments before rendering his opinions (Doc. 17 at 10). Further, Norman presents no evidence supporting the contention that Dr. Kahle was a treating source.

Nonetheless, the ALJ did apply the treating source analysis and provided good reasons, based on the objective evidence, for giving Dr. Kahle's opinion little weight (Doc. 11 at 34). Namely, Dr. Kahle did not explain the reasoning behind his opinion that Norman would specifically leave early or miss at least five days of work per month due to his "abscesses and infections" (Doc. 17 at 10–11). As the Commissioner notes, the Sixth Circuit has held that failure to explain the reasoning behind an opinion relating to a claimant's potential absenteeism is grounds for discounting that opinion. *Sharp v. Barnhart*, 152 F. App'x 503, 509–10 (6th Cir. 2005). The totality of the record evidence also does not support Dr. Kahle's opinion, and it was well within the ALJ's discretion to discount it. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The R&R details the medical records, testimony, and the opinions of Drs. Bolz, Delphia, and Onamusi, which sufficiently supports discounting the opinion of Dr. Kahle. Likewise, this Court concludes the ALJ properly relied on the record as a whole to discount Dr. Kahle's opinion, and the determination Norman had the ability to sustain employment.

## CONCLUSION

Norman's Objection (Doc. 18) is overruled, and this Court adopts the R&R (Doc. 17) in its entirety. The ALJ decision is upheld. The Complaint (Doc. 1) is dismissed.

IT IS SO ORDERED.

        s/ *Jack Zouhary*
    JACK ZOUHARY
    U. S. DISTRICT JUDGE

December 9, 2020